Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 Whether the act of April 10th, 1806, which prescribes a limitation to suits upon marshals’ bonds, is applicable to suits brought by the United States, is a question which we do not propose now to answer, for, if it is, we are still of the opinion that the defendants’ plea of the statute was an insufficient bar.
 

 The cause of action arose in 1860, and the present suit was brought on the 15th of February, 1869. But it is stipulated between the parties that from the 24th day of May, 1861, to the 24th day of May, 1865,. the defendants were
 
 *513
 
 actual residents of the
 
 State of
 
 Virginia, and that during the whole of that period, by reason of resistance to the execution of the laws of the United States, and the interruption of the ordinary course of judicial proceedings in said State of Virginia, the defendants could not be served witli process for the commencement of the action. We know, judicially, that during the four years in which the process could not be served there existed a state of war, and that the inability to effect service was caused by that. The question, therefore, is whether the. time during which the war existed, and during which it was impossible to serve process for commencement of suit, is to be deducted from the time which elapsed between 1860 and February 15th, 1869.
 

 In
 
 Hanger
 
 v.
 
 Abbott
 
 it was decided that the effect of the war was to suspend the ruuning of statutes of limitation during its continuance, in suits between the inhabitants of the loyal States and the inhabitants of those in rebellion. The same doctrine was repeated in substance in
 
 The Protector*.
 
 It would answer no good purpose to go behind the decisions and review the reasons upon which they are founded. We are still of opinion that they rest upon sound principle. But it is sa,id those decisions only rule that the war suspended the statutes’ running against claims by one citizen upon another, and that they do not relate to claims of the government against its own citizens resident in rebellious States. ■ This may be conceded, but the same reasons which justify the application of the rule to one class of cases require its application to the other. True, the
 
 right
 
 of a citizen to sue during the continuance of the war was suspended, while the
 
 right
 
 of the government remained unimpaired. But it is the loss of the ability to sue rather than the loss of the right that stops the running of the statute. The inability may arise from a suspension of right, or from-the closing of the courts, but whatever the original cause, the proximate and operative reason is that the claimant is deprived of the porver to institute his suit. Statutes of limitations are indeed statutes of repose. They are enacted upon the presumption that one having a well-founded
 
 *514
 
 claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away. In such a case the creditor has not the time within which to bring his suit that the statute contemplated he should have. It is quite obvious that this is the case, as well where the government is the creditor as where the creditor is a citizen of the government, and if, therefore, the running of the statute is suspended in favor of the citizen, with equal reason must it be in favor of the government. There is also great force in the thought suggested by the obseiwations made in
 
 Hanger
 
 v.
 
 Abbott,
 
 that “ unless the rule be so, the citizens of a State may escape the payment of their debts to the government by entering into an insurrection and rebellion, if they are able to close the courts and successfully resist the laws until the bar of the statute shall have become complete. Such a doctrine is too unreasonable to be for an instant admitted.”
 

 It has been argued, however, on behalf of the defendants in error, that if the general rule be as above stated, it was changed by the act of Congress of June 11th, 1864. The operation of the statute, it is said, is to direct that the time
 
 after the passage of the act
 
 during which process might be hindered shall be deducted in computing the time within which the action should have been brought, and hence that an implication arises that the time antecedent to its passage shall not be deducted. Such is not our understanding of the enactment. It is, doubtless, prospective as furnishing a rule for the action of courts, but it did not abrogate the common law. Even were it admitted that the time required to be deducted is only that which was after the passage of the act, there is no necessary implication that the time antecedent to its passage should be taken as a part of the period limited by law for. the commencement of actions. The act of March 2d, 1867,
 
 *
 
 authorized appeals and writs of error
 
 *515
 
 from and to courts injudicial districts when the regular sessions of the courts had been suspended by insurrection or rebellion, if brought or sued out within one year from the passage of the act. This act might with more reason be claimed as raising an implication that such appeals or writs of error cannot be allowed after the expiration of a year fropi its passage. Yet in
 
 The Protector
 
 it was held that an appeal was in time though not taken until July 28th, 1869, more than eight years after the final decree in the Circuit Court, and more than two years after the enactment of 1867, and this because the four years of the war were to be deducted. In other words, the statute being affirmative-only, raised no implication of an intent to repeal a former statute or alter the common law to which it was not repugnant.
 

 The purpose of the act of 1864 was manifestly remedial, to preserve and restore rights and remedies suspended by the war. Hence it is entitled to a liberal construction in favor of those whose rights and remedies were in fact suspended. The mischief it sought to remove would be but half remedied were it construed as contended for by the plaintiffs in error. It is not, therefore, to be admitted that the intention of Congress was to prescribe a deduction only of the time which might elapse after the passage of the act, during which it might be impossible to serve process. On the contrary, we are of opinion that the statute requires all the time to be deducted during which the suit could not be prosecuted by reason of resistance to the laws, or interruption of judicial proceedings, whether such time was before or after'its passage. Such we have decided to be its meaning at the present term, in
 
 Stewart
 
 v.
 
 Kahn,
 

 *
 

 and it is unnecessary to repeat the reasons given for the decision.
 

 These observations are sufficient to show that in our opinion there was error in entering a judgment for the defendants. v
 

 Judgment reversed and the cause remanded
 

 FOR FURTHER PROCEEDINGS.
 

 *
 

 14 Stat. at Large, 545.
 

 *
 

 Supra,
 
 493, the case immediately preceding.