[Nos. 79222-4; 79381-6.   En Banc.]
Argued June 26, 2007.     Decided December 13, 2007.

KEVIN J. LOCKE ET AL., *Respondents*, v. THE CITY OF SEATTLE ET AL., *Petitioners*.

MARGARET A. LINDELL, *as Personal Representative*, *Respondent*, v. THE CITY OF SEATTLE, *Petitioner*.

476

*Pamela A. Okano* (of *Reed McClure*); and *Thomas A. Carr, City Attorney*, and *Rebecca Boatright* and *Marcia M. Nelson, Assistants*, for petitioners.

*Todd W. Gardner*; *William J. Rutzick* (of *Schroeter Goldmark & Bender*); and *David J. Wieck* and *John L. O'Brien* (of *O'Brien Law Firm, PLLP*), for respondents.

*Alexander J. Skalbania* (*Thomas A. Woodley* and *Baldwin Robertson*, of counsel) on behalf of International Association of Fire Fighters, amicus curiae.

*William B. Aitchison* and *Christopher K. Vick* on behalf of King County Police Officers' Guild and Washington Council of Police and Sheriffs, amici curiae.

*Donald G. Daniel, Jr.*, and *Elizabeth A. McIntyre* on behalf of Washington Cities Insurance Authority, amicus curiae.

*Daniel B. Heid* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

*Bryan P. Harnetiaux* and *Kelby D. Fletcher* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 Owens, J. — In these consolidated cases, respondents Kevin Locke and Gary Lindell's personal representative sued the city of Seattle (City) for injuries sustained during

Locke's and Lindell's employment. In both cases, the City challenges the "right to sue" provision in the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF), chapter 41.26 RCW. *See* RCW 41.26.281 ("right to sue" provision). The City contends that LEOFF's "right to sue" provision violates sovereign immunity and the privileges and immunities clause in article I, section 12 of the Washington Constitution. In *Locke,* the City also contends that Locke was not a fire fighter at the time of his injury and that the evidence presented at trial does not support the jury's future damages award. We affirm the Court of Appeals in part and hold that the "right to sue" provision abrogates the City's sovereign immunity, that the City has no standing to challenge the provision under Washington's privileges and immunities clause, that Locke was a fire fighter under LEOFF, and that the evidence supported the jury's future damages award.

FACTS

Locke

¶2 The City hired Locke as a fire fighter in 2000 and sent him to a 12-week fire fighter training course. During the 10th week of training, Locke sustained injuries when he fainted from dehydration and fell from a 50-foot ladder while performing a practice rescue with a 120-pound mannequin. Locke sued the City for his injuries under the "right to sue" provision in LEOFF. A jury determined that the City was negligent and returned a verdict in Locke's favor. The City appealed, arguing in part that Locke was not a fire fighter under LEOFF because he was in training and that LEOFF's "right to sue" provision violated several constitutional provisions. The Court of Appeals affirmed the jury verdict and denied the City's constitutional claims in a partially published opinion. *Locke v. City of Seattle*, 133 Wn. App. 696, 137 P.3d 52 (2006). We accepted review. *Locke v. City of Seattle*, 158 Wn.2d 1025 (2007).

Lindell

¶3 Seattle Police Officer Gary Lindell's personal representative brought a wrongful death action against the City under LEOFF's "right to sue" provision for Lindell's 2002 death. According to the complaint, Lindell died from injuries he sustained when he fell from his service horse during a 1999 training exercise for the Seattle Police Mounted Patrol Unit. The City moved for summary judgment, challenging the constitutionality of the LEOFF statute. The trial court denied the City's motion and the City appealed. A Court of Appeals commissioner denied review based on the Court of Appeals opinion in *Locke,* and the court denied the City's motion to modify. We accepted review on the issues of sovereign immunity and privileges and immunities and consolidated the appeal with *Locke.*

## ISSUES

¶4 A. Does LEOFF's "right to sue" provision violate the City's sovereign immunity?

¶5 B. Does LEOFF's "right to sue" provision violate Washington's privileges and immunities clause?

¶6 C. Is Locke, a fire fighter in training school, a Plan 2 member under LEOFF?

¶7 D. Is "excess damages" an element of a LEOFF claim?

¶8 E. Does evidence support the jury's award for Locke's future damages?

## ANALYSIS

A. *Does LEOFF's "right to sue" provision violate the City's sovereign immunity?*

¶9 The City in both *Locke* and *Lindell* argues that the City is immune from suit under sovereign immunity principles. RCW 41.26.281 grants law enforcement officers and fire fighters the "right to sue" their employers for

damages over the amount received under workers' compensation. *See Fray v. Spokane County*, 134 Wn.2d 637, 655, 952 P.2d 601 (1998); *accord Hauber v. Yakima County*, 147 Wn.2d 655, 660, 56 P.3d 559 (2002). Whether the legislature has abrogated the City's sovereign immunity by statute is a question of statutory interpretation. As with all questions of law, we review questions of statutory interpretation de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005) (citing *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 552, 988 P.2d 961 (1999)).

¶10 A municipality derives its sovereign immunity from the State. *Kelso v. City of Tacoma*, 63 Wn.2d 913, 916-17, 390 P.2d 2 (1964) (discussing municipality sovereign immunity). The state legislature may waive such immunity as provided in article II, section 26 of the Washington Constitution: "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." *Accord Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261 (1980) ("[T]he abolition of sovereign immunity is a matter within the legislature's determination."). The City argues that the legislature has not waived the municipality's sovereign immunity from suits under LEOFF.

¶11 In *Locke*, 133 Wn. App. at 702-04, the Court of Appeals ruled that the legislature waived the City's sovereign immunity by enacting RCW 4.96.010(1), which provides in pertinent part as follows:

> All local governmental entities . . . shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, *to the same extent as if they were a private person or corporation.*

(Emphasis added.) The City contends that RCW 4.96.010(1) does not waive its sovereign immunity because private employees may not sue their employers under LEOFF and must instead recover exclusively under the Industrial Insurance Act, Title 51 RCW. We have already held that RCW

4.96.010 waives sovereign immunity for LEOFF Plan 1 members under an identical "right to sue" provision. *Taylor v. City of Redmond*, 89 Wn.2d 315, 320, 571 P.2d 1388 (1977). Thus, we must determine whether the same is true for LEOFF Plan 2 members.

¶12 The Court of Appeals held that RCW 4.96.010 waives the City's sovereign immunity, holding that "[t]he correct interpretation of RCW 4.96.010 is that if a government is found to have engaged in tortious conduct under applicable substantive law, which may or may not be different for government than for private parties, then the government will be liable for such tortious conduct 'to the same extent as if [it] were a private person or corporation.' " *Locke*, 133 Wn. App. at 703-04 (quoting RCW 4.96.010).

¶13 We hold that RCW 4.96.010 waives the City's sovereign immunity for suits under LEOFF. As we have previously articulated, the concern in RCW 4.96.010 is not to impose new, general public duties upon the municipality. *E.g.*, *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 304-05, 669 P.2d 468 (1983) (describing analysis under RCW 4.96-.010), *overruled on other grounds by Meaney v. Dodd*, 111 Wn.2d 174, 759 P.2d 455 (1988); *see also Beal v. City of Seattle*, 134 Wn.2d 769, 784-86, 954 P.2d 237 (1998) (describing public duty doctrine). Allowing LEOFF members to sue their employers for negligent or intentional harm does not create a new municipal duty not otherwise existing for private parties. Further, the language of RCW 4.96.010 does not state that parties may sue governmental entities "*only* to the same extent as a private party may be liable." Rather, it merely notes that municipalities may not be liable for breaches of duties not generally existing for private entities or corporations. Thus, we hold that RCW 4.96.010 waives the City's sovereign immunity.

B.  *Does LEOFF's "right to sue" provision violate Washington's privileges and immunities clause?*

¶14 The City also contends that the LEOFF "right to sue" provision violates Washington's privileges and immu-

nities clause. The City has no rights of its own under the privileges and immunities clause, and it has not established standing to assert the rights of any other person or entity.

¶15 Washington's privileges and immunities clause provides, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." WASH. CONST. art. I, § 12. Where the text of a constitutional provision is plain, the court must give the language its reasonable interpretation without further construction. *Larson v. Seattle Popular Monorail Auth.*, 156 Wn.2d 752, 757-58, 131 P.3d 892 (2006). By its express language, article I, section 12 does not apply to municipal corporations.[1]

¶16 The City contends that article I, section 12 is violated by RCW 41.26.281 because while the City must pay workers' compensation benefits, the statute prevents it from enjoying like immunity under the Industrial Insurance Act with other employers. This is a claim that the City has been denied immunity enjoyed by other employers and that it therefore is not treated equally. As a municipal corporation, the City is not entitled to make this claim under article I, section 12.

¶17 The City also maintains that fire fighters and police officers should not enjoy special rights that do not belong to other employees, i.e., the right to sue the City. However, the City does not show how it has standing to complain about this asserted unequal treatment. The case chiefly relied on by the City, *Alton V. Phillips Co. v. State*, 65 Wn.2d 199, 396 P.2d 537 (1964), involved a special enactment that allowed one specific contractor to sue the State notwithstanding statutes of limitations. The State was allowed to challenge

---

[1] This court, from its early history, has frequently recognized this fact. *See, e.g., City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985); *State ex rel. Nw. Elec. Co. v. Superior Court*, 28 Wn.2d 476, 489, 183 P.2d 802 (1947); *City of Spokane v. Spokane County*, 179 Wash. 130, 136, 36 P.2d 311 (1934); *McCormacks, Inc. v. City of Tacoma*, 170 Wash. 103, 108, 15 P.2d 688 (1932); *Bilger v. State*, 63 Wash. 457, 469, 116 P. 19 (1911).

the unconstitutionality of the statute under article I, section 12. But *Alton V. Phillips* involved a suit against *the State*, not against *a municipal corporation*. It does not support the City's standing in this case.[2] Because the City does not have standing to bring a privileges and immunities claim, we do not address that claim here.

C. *Is a fire fighter attending a 12-week training program a LEOFF Plan 2 member?*

■ ¶18 The City filed a motion for summary judgment in the trial court, contending that the court lacked jurisdiction over Locke's suit against the City because Locke was a fire fighter trainee and therefore not a LEOFF member entitled to sue under RCW 41.26.281. The trial court denied summary judgment and the Court of Appeals affirmed, noting that the evidence revealed that the City enrolled Locke as a fire fighter and that the relevant law did not distinguish between fire fighter trainees and fully trained fire fighters. We review summary judgment de novo, engaging in the same inquiry as the trial court. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

■ ¶19 LEOFF defines " '[f]irefighter' " as "[a]ny person who is serving on a full time, fully compensated basis as a member of a fire department of an employer and who is serving in a position which requires passing a civil service examination for firefighter, and who is actively employed as such." RCW 41.26.030(4)(a). The Department of Retirement Systems has also promulgated an administrative code governing the definition of a "fire fighter." According to the

---

[2] We recognize that standing requirements are sometimes relaxed where a municipal corporation seeks to challenge on equal protection grounds the constitutionality of a legislative act, provided that the controversy is of sufficiently serious importance. *See City of Seattle*, 103 Wn.2d at 668-69. This principle should not be applied here. Allowing the City to indirectly bring a challenge under article I, section 12 that it is not entitled to make directly would contravene the constitution's plain intent.

code, a "fire fighter" is someone "employed in a uniformed fire fighter position by an employer on a full-time, fully compensated basis, and as a consequence of . . . employment, [has] the legal authority and responsibility to direct or perform fire protection activities that are required for and directly concerned with preventing, controlling and extinguishing fires." WAC 415-104-225(2). The WAC further defines " '[f]ire protection activities' " to "include incidental functions such as housekeeping, equipment maintenance, . . . fire safety inspections, lecturing, performing community fire drills . . . . These activities qualify as fire protection activities only if the primary duty of [the] position is preventing, controlling and extinguishing fires." WAC 415-104-225(2)(a). According to WAC 415-104-225(2)(d), a person is a "fire fighter" "regardless of [his or her] rank or status as a probationary or permanent employee or [his or her] particular specialty or job title."

¶20 In the instant case, the evidence at summary judgment revealed that Locke passed the city of Seattle Public Safety Civil Service Commission fire fighter examination on June 26, 1999, with a score of 94.66—placing him in the top 25 percent of all exam takers. Clerk's Papers (CP) at 2060, 2120. As a result of Locke's exceptional score, the City offered him employment as an "entry level Fire Fighter" in a March 27, 2000 letter. *Id.* at 2121-22 ("[C]ongratulations on your appointment as an entry level Fire Fighter."). The letter further explained that upon acceptance of the offer of employment Locke would enter recruit training—a 12-week program beginning April 19, 2000. Locke reported to recruit training as directed on April 19, 2000. Locke also filled out a "State of Washington Department of Retirement Systems Enrollment Form," which listed his job title as "FIRE FIGHTER" and enrolled him in LEOFF Plan 2. *Id.* at 2123. On September 15, 2003, the Seattle Fire Department sent Locke a letter confirming that, "[s]ince the effective date of your appointment to Fire Fighter, April 19, 2000, you have been a LEOFF II Retirement System member." *Id.* at 2125.

¶21 The City argues that this evidence was insufficient to establish that Locke was a fire fighter. Specifically, the

City contends that Locke was not a fire fighter because he was a member of a recruit class. The City likewise argues that Locke was not a fire fighter because he did not have "the legal authority and responsibility to direct or perform fire protection activities." WAC 415-104-225(2).

¶22 We reject the City's arguments and hold that Locke was a fire fighter for purposes of LEOFF. The evidence established that Locke was "serving in a position which requires passing a civil service examination for fire fighter," within the meaning of RCW 41.26.030(4)(a). Even under the WAC definition of "fire fighter," Locke had the "legal authority" to perform fire protection activities, even if those activities were done in relation to training. As amicus curiae International Association of Fire Fighters notes, fire fighters often undergo regular training exercises throughout their career and are fire fighters during their training periods. As the Court of Appeals in this case observed, "the city's proposed narrow definition of 'fire fighter' . . . discounts the value placed by the legislature upon those who undertake the risks involved in fire fighter training." *Locke*, 133 Wn. App. at 712. Accordingly, we affirm on this issue.

D. *Did the trial court err in instructing the jury on "excess damages"?*

██ ¶23 A fire fighter or police officer may sue his employer under LEOFF only "for any excess of damages over the amount received or receivable" through workers' compensation. RCW 41.26.281; *accord Fray*, 134 Wn.2d at 648-49. The City argues the LEOFF plaintiffs bear the burden of establishing "the amount received or receivable" via workers' compensation and that the trial court erred in instructing the jury that the City had to establish the amount received or receivable. However, the parties in the instant case stipulated to the amount of workers' compensation benefits Locke received. Thus, any error in the jury instruction was harmless.

E. *Does the evidence support the jury's future economic damages award?*

¶24 The City contends that the evidence produced during Locke's trial does not support the jury's future economic damages award of $514,000. The City brought a CR 59 motion for new trial or for a remittitur, arguing in part that Locke did not meet his burden of establishing the future economic damages award and that the damages award resulted from prejudice or passion. CR 59(a)(5). The trial court denied the City's motion and the Court of Appeals affirmed.

¶25 We review the denial of a new trial or remittitur for abuse of discretion. *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 175-76, 116 P.3d 381 (2005) (discussing standard of review for remittitur); *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537-38, 998 P.2d 856 (2000) (discussing standard of review for CR 59 motion). A court abuses its discretion when the jury award is contrary to the evidence. To determine whether evidence supports the jury's damages award, we must examine the record. *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997). However, "courts are reluctant to interfere with a jury's damage award when fairly made." *Id.* ("Determination of the amount of damages is within the province of the jury."). If we determine that the evidence does not support the jury's award, we may reduce the award. *Bunch*, 155 Wn.2d at 175-76.

¶26 The evidence at trial revealed that Locke's fall resulted in permanent injuries. Verbatim Report of Proceedings (VRP) (June 7, 2004, 1:30 PM) at 43. As a result of these permanent injuries, Locke received physical therapy, massage, and rolfing treatments for his ongoing and increasing pain. VRP (June 23, 2004) at 192-94, 202-03. The physical therapist testified that her physical therapy visits cost $160 per visit. VRP (June 7, 2004, 1:30 PM) at 50-51. The evidence further revealed that Locke spent more than $10,000 for such treatment in the two years preceding the

trial. *Id.* at 100. The court instructed the jury that Locke's life expectancy was an additional 32.43 years. CP at 4079.

¶27 Locke's physical therapist testified that it may take four to six months before Locke reached the maximum benefit from physical therapy but also testified that his injuries were permanent. Locke testified that he needed massage and rolfing treatments in addition to physical therapy to manage his increasing pain. VRP (June 23, 2004) at 192-94, 202-03. Experts also testified that Locke may one day need future treatment such as subtalar fusion. VRP (July 1, 2004) at 27. The City further acknowledged that Locke was entitled to $49,000 in lost future business. Br. of Appellants at 43.

¶28 Based on the evidence presented at trial, the jury could have concluded that Locke's permanent injuries would require continued treatment for his life expectancy to manage the permanent injuries and increasing pain. We therefore hold that the trial court did not abuse its discretion in denying the City's motion for a new trial or remittitur.

## CONCLUSION

¶29 We hold that the LEOFF "right to sue" provision abrogates the City's sovereign immunity. We also hold that the City does not have standing to assert a Washington privileges and immunities claim in this case. We affirm the Court of Appeals and the trial court on all other issues in *Locke.* Accordingly, we remand the consolidated cases for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

Reconsideration denied April 8, 2008.